UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JESSIE E. WASHINGTON,<br>       Plaintiff | :<br>:<br>: |
| v. | :   C.A. No.: 2017- |
| CITY OF PAWTUCKET,<br>By and through its Treasurer,<br>SHAUN STROBEL, alias,<br>       Defendant | :<br>:   **Jury Trial Demanded**<br>:<br>:<br>: |

## COMPLAINT

### I. Introduction

1. This is an action brought by Plaintiff Jessie E. Washington ("Plaintiff") against her current employer, the City of Pawtucket, by and through its Treasurer, Shaun Strobel, alias, ("Defendant" or "City"), seeking compensatory, liquidated, and punitive damages, counsel fees, costs and other equitable relief arising out of willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* as well as violations of the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et seq.* and § 28-14-1, *et. seq.*

### II. Parties

2. Plaintiff is a resident of the City of Pawtucket, County of Providence, and State of Rhode Island.

3. At all relevant times, Plaintiff was an "employee"—within the meaning of 29 U.S.C. § 203(e)(2)(C) of the FLSA and R.I. Gen. Laws §§ 28-12-2(5) and 28-14-1(2) of the RIPWA—employed by Defendant in the State of Rhode Island.

4. Defendant is a duly authorized and organized municipality under the laws of the State of Rhode Island and is sued by and through its Treasurer, Shaun Strobel, who is the official

designated by state law, R.I. Gen. Laws § 45-15-5, to be named in a suit for relief against the City for monetary damages.

### III. Jurisdiction

5. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law; specifically, the FLSA, 29 U.S.C. § 201, *et seq.* Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy.

### IV. Venue

6. Venue is proper in this Court insofar as Defendant is doing business in Rhode Island and therefore is deemed to reside in the District of Rhode Island, in compliance with the requirements set forth in 28 U.S.C. § 1391. Moreover, a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island, which establishes further that venue is proper in this Court.

### V. Exhaustion of Administrative Remedies

7. In accordance with R.I. Gen. Laws § 45-15-5, on or about July 28, 2016, Plaintiff presented to Defendant's City Council a particular account of her claim against the Defendant for unpaid wages, including unpaid overtime pay.

8. More than forty (40) days have passed since Plaintiff presented her claim against the Defendant for unpaid wages, including unpaid overtime pay.

9. Because "just and due satisfaction" has not been made to Plaintiff by Defendant or Defendant's treasurer, Plaintiff has commenced the instant action against Defendant for unpaid wages, including unpaid overtime pay. *See* R.I. Gen. Laws § 45-15-5.

## VI. Material Facts

### A. FLSA and RIPWA Liability Allegations

10. The Defendant is a "Public agency" within the meaning of 29 U.S.C. § 203(x) because it is a "political subdivision" of the State of Rhode Island. *See also* 29 C.F.R. § 553.3.

11. At all relevant times, Defendant suffered or permitted Plaintiff to work for the Defendant.

12. At all relevant times, Defendant was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA and within the meaning of R.I. Gen. Laws §§ 28-12-2(7) and 28-14-1(3) of the RIPWA.

13. Because the Defendant is a Public agency, the Defendant is "deemed" to be an "enterprise" within the meaning of 29 U.S.C. §§ 203(r)(1) and 29 U.S.C. § 203(r)(2).

14. Further, the Defendant is "an enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1) because the activity it performs is that of a "public agency." *See* 29 U.S.C. § 203(s)(1)(C).

### B. Personnel Rules and Regulations Promulgated By Defendant

15. On or about March 3, 2014, Defendant hired Plaintiff to work as a paralegal in its Legal Department, which is located at 137 Roosevelt Avenue, Pawtucket, Rhode Island, 02860.

16. At all relevant times, Attorney Frank Milos was Plaintiff's supervisor.

17. Throughout Plaintiff's employment with Defendant, Plaintiff was compensated on a salary basis that was based upon a thirty-five (35) hour workweek.

18. Throughout Plaintiff's employment with Defendant, Defendant paid Plaintiff a gross weekly salary of $631.25.

19. At all relevant times, the terms and conditions of Plaintiff's employment with the Defendant were governed by City of Pawtucket Personnel Rules & Regulations ("Personnel Rules & Regulations").

20. The Personnel Rules & Regulations provide that Plaintiff is required to work a minimum of seven (7) hours per workday from Monday through Friday. *See* Rule XIV Section 1.

21. As a classified employee, the Personnel Rules & Regulations mandate that Defendant compensate Plaintiff with ***overtime compensation "at the rate of time and one-half"*** of her regular rate of pay when Plaintiff works over her standard hourly workday of seven (7) hours, or over her standard hourly workweek of thirty-five (35) hours. *See* Rule XIV Section 2(c).

### C. Overtime Hours Worked By Plaintiff
*March 2014 – February 2016*

22. From on or about March 3, 2014 through on or about February of 2016, Defendant required Plaintiff to input thirty-five (35) hours for Plaintiff and the other employees of the City's Legal Department into a computer system that Defendant utilized for payroll purposes known as "NAVILINE," as a result of which everyone was paid the same set amount each week according to their pay scale.

23. Attorney Milos instructed Plaintiff to input into the NAVILINE system no more than seven (7) hours per workday and no more than thirty-five (35) hours per workweek despite the fact that Plaintiff often worked more than seven (7) hours per workday and more than thirty-five (35) hours per workweek.

24. Attorney Milos also instructed Plaintiff to input into the NAVILINE system no more than seven (7) hours per workday and no more than thirty-five (35) hours per workweek for Plaintiff's co-workers in the City's Legal Department despite the fact that the amount of hours worked by said co-workers had not been totaled or tracked in any fashion, and Plaintiff was never supplied with any documents evidencing the amount of hours that they actually worked.

25. Plaintiff and the other employees of the City's Legal Department were compensated based upon the amount of hours that is inputted into the NAVILINE system.

26. Once the amount of hours for employees of the City's Legal Department was inputted into the NAVILINE system, Attorney Milos had to approve said amount in order for payment to issue to the City's Legal Department employees.

27. Plaintiff took issue with Attorney Milos's instruction discussed in paragraph twenty-three (23) above because when Plaintiff interviewed for the paralegal position, and when Plaintiff was first hired by the City, she was told by the City, including Attorney Milos, that she would be paid on a *salary* basis.

28. Thus, Plaintiff asked Attorney Milos and Defendant's Finance Director, Joanna L'Heureux, why she was required to enter an amount of hours into the NAVILINE system if she was to be paid on a salary basis.

29. Plaintiff also told Attorney Milos and Ms. L'Heureux that she often worked more than thirty-five (35) hours per workweek.

30. In response, both Attorney Milos and Ms. L'Heureux told Plaintiff that she was properly classified as an exempt employee and therefore not entitled to overtime pay, regardless of the number of hours she worked.

*March 2016 – January 2017*

31. On or about March of 2016, Defendant implemented a new time recording system known as "ExecuTime," which certain employees, including Plaintiff and Plaintiff's co-workers in the City's Legal Department, were required to use to clock in when commencing work and to clock out when departing work.

32. Prior to the implementation of ExecuTime, neither Plaintiff nor Plaintiff's co-workers in the City's Legal Department clocked in when commencing work nor did they clock out when departing work.

33. After the implementation of this new time recording system, Plaintiff was still required to enter no more than seven (7) hours per workday and no more than thirty-five (35) hours per workweek into the old NAVILINE system for Plaintiff and Plaintiff's co-workers in the City's Legal Department.

34. Even after Defendant's implementation of the ExecuTime time recording system, Plaintiff and the other employees of the City's Legal Department were compensated based upon the amount of hours that was inputted into the NAVILINE system.

35. On or about March of 2016, Plaintiff complained to Ms. L'Heureux that she often worked more than seven (7) hours per workday and more than thirty-five (35) hours per workweek without overtime compensation and that Defendant misclassified her as an exempt employee.

36. Nevertheless, Ms. L'Heureux responded to Plaintiff by instructing Plaintiff to continue entering into the NAVILINE system no more than seven (7) hours per workday and no more than thirty-five (35) hours per workweek.

37. Shortly thereafter, and in a sudden change of position, the Defendant, by and through Attorney Milos *acknowledged that Plaintiff was in fact a non-exempt employee.*

38. *However, Defendant inexplicably continued to refuse to pay Plaintiff any and all of her outstanding wages due, including overtime pay.*

39. On or about June 2016, after Plaintiff's complaint continued to go unanswered, Plaintiff notified Defendant that she would no longer enter into the NAVILINE system no more than seven (7) hours per workday and no more than thirty-five (35) hours per workweek because she believed and understood that this information amounted to inaccurate time records.

40. In light of Defendant acknowledging that Plaintiff was a non-exempt employee, on or about June 22, 2016, Plaintiff submitted a written complaint to Attorney Milos and Don Zimmerman, who is Defendant's Director of Consolidated Human Resources, complaining that Defendant had not been compensating her for all of her hours worked, including overtime pay.

41. In response to Plaintiff's written complaint set forth in paragraph forty (40), Attorney Milos communicated to Plaintiff that although he and many of Defendant's employees were aware Plaintiff often worked more than seven (7) hours per workday and more than thirty-five (35) hours per workweek, Plaintiff would not be compensated for this time worked because Plaintiff had not obtained prior approval to work these hours nor was Plaintiff required to work these hours.

42. However, at no point during Plaintiff's employment with Defendant had Defendant ever required Plaintiff to obtain prior approval to work more than seven (7) hours per workday or more than thirty-five (35) hours per workweek.

43. Moreover, Defendant, by and through Attorney Milos and other supervisory employees, was well aware, and knew or should have known, that Plaintiff was working more than seven (7) hours per workday and/or more than thirty-five (35) hours per workweek on a nearly weekly basis.

44. On or about the week ending January 21, 2017, Plaintiff, once again, brought to the City's attention that she had worked over thirty-five (35) hours without overtime compensation during on or about the week ending January 14, 2017.

45. In fact, the ExecuTime records indicate that Plaintiff had worked in excess of thirty-five (35) hours during at least one other week in January 2017.

### D. Retaliation

46. As a result of Plaintiff's complaints about Defendant's unlawful payment practices and other unlawful conduct as discussed above, Defendant has retaliated against Plaintiff.

47. Plaintiff has been disrespected by Defendant's management and isolated from other employees of Defendant for asserting her right to payment of unpaid wages and overtime pay.

48. For instance, on or about October 18, 2016, Attorney Milos yelled at Plaintiff and cut her off from speaking to him when Plaintiff spoke to him about a routine work matter, which is something he never did prior to her asserting her wage and hour complaints.

49. When Plaintiff reported this rude and disrespectful treatment that she received from Attorney Milos to Defendant's management, Plaintiff's complaints were ignored, and she was told to work out her grievances with Attorney Milos personally.

50. In addition, Defendant has threatened Plaintiff with disciplinary action and the termination of her employment as a result of asserting her right to payment of unpaid wages and overtime pay.

51. Indeed, on or about October of 2016, Attorney Milos threatened to discipline Plaintiff if she refused to "round down" the amount of time that she actually worked so that it would not exceed thirty-five (35) hours during a workweek.

52. Moreover, Defendant has further retaliated against Plaintiff for asserting her right to unpaid wages and overtime pay by refusing to grant Plaintiff annual salary increases despite the fact that other employees similarly-situated to Plaintiff have received such increases.

**E.    Plaintiff's Non-Exempt Employee Status Entitling Her to Overtime Compensation**

53. Both the FLSA and the RIPWA require employers to pay their employees at a rate not less than one and one-half (1 ½) times their regular rate of pay for all hours worked in excess of forty (40) in any one (1) workweek. *See* 29 U.S.C. § 207(a)(1); R.I. Gen. Laws § 28-12-4.1.

54. The FLSA and the RIPWA exempt, among others, certain "bona fide executive, administrative, or professional" white-collar employees from its overtime provisions. *See* 29 U.S.C. § 213(a)(1); R.I. Gen Laws § 28-12-4.3(a)(4).

55. The aforementioned exemptions from the payment of overtime are "narrowly construed against the employers seeking to assert them and their application." *See Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960).

56. The burden of proving an exemption under the FLSA and the RIPWA is placed "upon the employer." *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3rd Cir. 1991) (*citing Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966)).

57. The "remedial nature" of the FLSA requires that these white-collar exemptions be "'limited to those establishments plainly and unmistakably within the exemptions' terms and spirit.'" *See Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 683 (1st Cir. 2007) (*quoting Reich v.*

*John Alden Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir. 1997) (*quoting Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

58. The exempt or nonexempt status of any particular employee is determined on the basis of whether the employee's salary **and duties** meet the requirements of the U.S. Department of Labor wage and hour regulations. *See* 29 C.F.R. § 541.2, *et seq.* (emphasis added).

59. Paralegals do not qualify as exempt "professional" employees because an advanced specialized academic degree is not a standard prerequisite for entry into this field. *See* 29 C.F.R. § 541.301(e)(7).

60. Indeed, Plaintiff possesses no advanced specialized degree in any professional fields.

61. It has long been the position of the United States Department of Labor Wage and Hour Division that paralegal employees are non-exempt employees.[1]

62. Accordingly, Plaintiff is a non-exempt employee entitled to overtime pay for the time that she worked in excess of forty (40) hours each workweek.

F. **The RIPWA's Mandate Imposed Upon Employers To Pay Its Employees "All Due Wages"**

63. The RIPWA prescribes that every employee shall be paid "*all due wages* from his or her employer." *See* R.I. Gen. Laws § 28-14-2.2(a) (emphasis added).

64. The RIPWA broadly defines the word "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task,

---

[1] *See* Wage & Hour Op., FLSA2006-27, p. 4; *see also* Wage & Hour Op., FLSA2005-9 (Jan. 7, 2005), Wage & Hour Op., FLSA2006-27 (July 24, 2006), Wage & Hour Op., FLSA 2005-54 (December 16, 2005), Wage & Hour Op., August 17, 1979; Wage & Hour Op., September 27, 1979; Wage & Hour Op., June 12, 1984; Wage & Hour Op., April 13, 1995; Wage & Hour Op., February 19, 1998; Wage & Hour Op., 1998 WL 852667 (Mar. 20, 1998).

piece, commission basis, or other method of calculating the amount." *See* R.I. Gen. Laws § 28-14-1(4).

65. The RIPWA provides expressly that none of its provisions shall in any way limit or prohibit private agreements between an employer and its employee that provide for the payment of wages or compensation in greater amounts than that which is provided for by the RIPWA. *See* R.I. Gen. Laws § 28-14-9.

### G. Failure to Pay Overtime Wages

*Workweeks In Which Plaintiff Worked In Excess of Forty (40) Hours*

66. From on or about the week ending March 7, 2014 through on or about the week ending October 21, 2016, there were approximately thirty-seven (37) weeks in which Plaintiff actually worked more than forty (40) hours per workweek without being compensated with overtime pay for an approximate total of eighty-eight (88) hours.

67. Despite the fact that Plaintiff is a non-exempt employee, Defendant failed or refused to compensate Plaintiff with overtime pay for those workweeks in which Plaintiff worked more than forty (40) hours as required by the FLSA and the RIPWA.

68. As discussed above, Plaintiff notified Defendant that she had actually been working more than forty (40) hours per workweek, and Defendant responded by instructing Plaintiff to record that she had not worked more than thirty-five (35) hours per workweek.

69. In addition, and as described above, despite the fact that Defendant acknowledged that Plaintiff is in fact a non-exempt employee and is thereby entitled to overtime pay, Defendant continued to refuse to pay Plaintiff any and all of her outstanding wages due, including overtime pay.

70. Therefore, Defendant ***willfully and repeatedly*** violated the FLSA as well as the

RIPWA by employing Plaintiff for more than forty (40) hours in a workweek without compensating her at a rate not less than one and one-half (1 ½) times the regular rate at which she was employed for all hours in excess of forty (40).

***Workweeks In Which Plaintiff Worked In Excess of Thirty-Five (35) Hours But Less Than Forty (40) Hours***

71. From on or about the week ending March 7, 2014 through on or about the week ending October 21, 2016, there were approximately twenty-four (24) workweeks in which Plaintiff actually worked more than thirty-five (35) hours but less than forty (40) hours without being compensated with overtime pay as required under the Personnel Rules & Regulations for an approximate total of forty-three (43) hours.

72. After the week ending October 21, 2016, and to this workday, Plaintiff continues to work in excess of thirty-five (35) hours per workweek without being compensated with overtime pay as required under the Personnel Rules & Regulations.

73. Despite Plaintiff's working more than thirty-five (35) hours during numerous workweeks, Defendant failed to compensate Plaintiff with overtime compensation at the rate of time and one-half for said time worked, which is a violation of its own Personnel Rules & Regulations and is thereby a violation of the RIPWA.

74. Because of the overtime provision contained within the Personnel Rules & Regulations stating that Defendant would compensate Plaintiff at a rate of time and one-half for any time worked in excess of thirty-five (35) hours per workweek, Defendant is liable to Plaintiff, pursuant to the RIPWA, for all unpaid wages, including overtime compensation, for all time that Plaintiff worked in excess of thirty-five (35) hours per week.

***Workweeks In Which Plaintiff Worked More Than Seven (7) Hours In At Least One Workday But Less Than Thirty-Five Hours In Total***

75. From on or about the week ending March 7, 2014 through on or about the week ending October 21, 2016, there were approximately forty-five (45) workweeks in which Plaintiff worked less than thirty-five (35) hours but actually worked more than seven (7) hours on at least one workday without being compensated with overtime pay as required under the Personnel Rules & Regulations.

76. Despite Plaintiff's working more than seven (7) hours on at least one workday during several workweeks, Defendant failed to compensate Plaintiff with overtime compensation at the rate of time and one-half for said time worked, which is a clear violation of its own Personnel Rules & Regulations and is thereby a violation of the RIPWA.

77. Because of the overtime provision contained within the Personnel Rules & Regulations stating that Defendant would compensate Plaintiff at a rate of time and one-half for any time worked in excess of seven (7) hours per workday, Defendant is liable to Plaintiff, pursuant to the RIPWA, for all unpaid wages, including overtime compensation, for all time that Plaintiff worked in excess of seven (7) hours per workday.

### H. Work Suffered or Permitted

78. Defendant is liable to Plaintiff for the payment of wages or overtime wages for all hours that Plaintiff was "suffered or permitted to work"—regardless of whether the work was requested, authorized or needed—whenever Defendant knew or had constructive knowledge that the work was being performed.[2]

79. In addition, Defendant knew or had reason to believe that throughout Plaintiff's employment with Defendant, Plaintiff was working in excess of thirty-five (35) hours

---

[2] As long as the employer knows or has reason to believe that its employee is continuing to work, that time is "work time," and the employee is entitled to the payment of wages from the employer for said time. *See* 29 C.F.R. § 785.11.

per workweek and in excess of seven (7) hours per workday on a regular basis for which she was not being compensated.

80. Accordingly, Defendant had constructive, if not actual, knowledge that Plaintiff regularly performed work for which she was not compensated.

81. Defendant knew or had reason to believe that throughout Plaintiff's employment with Defendant, Plaintiff was working in excess of forty (40) hours per workweek on a regular basis for which she was not being compensated at a rate not less than one and one-half times the regular rate at which she was employed.

82. Accordingly, Defendant had constructive, if not actual, knowledge that Plaintiff regularly performed overtime work for which she was not compensated at a rate not less than one and one-half times the regular rate at which she was employed.[3]

83. Nevertheless, Defendant failed or refused to pay Plaintiff the compensation to which she was legally entitled for all overtime hours worked.[4]

### VII. Claims for Relief

84. Plaintiff incorporates the allegations in ¶¶1 through 83 above in each of the counts set forth below.

**Count One**
*Fair Labor Standards Act,*
*29 U.S.C. § 201, et. seq.*

85. Defendant, by its acts and/or omissions, including, but not limited to, those

---

[3] An employer is said to have "constructive knowledge" of its employee's overtime work when it has reason to believe that its employee is working beyond his shift. *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306 (11th Cir. 2007).

[4] Once an employer knows or has reason to know that an employee is working overtime, *it cannot deny compensation even where the employee fails to claim overtime hours or the work was not requested. Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516 (2d Cir. 1998); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007).

described herein, violated the FLSA by failing to pay Plaintiff wages and overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

**Count Two**
*Retaliation*
*29 U.S.C. § 215, et seq.*

86. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, violated the FLSA by retaliating against Plaintiff for asserting her rights to unpaid wages and overtime wages owed to her, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

**Count Three**
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws § 28-12, et. seq., and*
*R.I. Gen. Laws § 28-14-1, et seq.*

87. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, violated and continues to violate the RIPWA by failing to pay Plaintiff wages and overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2.

**Count Four**
*Retaliation*
*Rhode Island Payment of Wages Act,*
*R.I. Gen. Laws § 28-12, et. seq., and*
*R.I. Gen. Laws § 28-14-1, et seq.*

88. Defendant, by its acts and/or omissions, including, but not limited to, those described herein, violated the RIPWA by retaliating against Plaintiff for asserting her rights to unpaid wages and overtime wages owed to her, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws §§ 28-12-16 and 28-14-19.3.

## VIII. Prayers for Relief

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendant, including, but not limited to those complained of herein, are in violation of the FLSA and the RIPWA.

2. An injunction enjoining Defendant from violating the wage and overtime payment requirements under the FLSA and the RIPWA in the manner complained of herein.

3. An award of compensatory damages.

4. An award of punitive damages.

5. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

6. An award of liquidated damages in an amount up to two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2.

7. An award of reasonable attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

8. An award of reasonable attorneys' fees and costs pursuant to R.I. Gen. Laws §§ 28-14-19.2.

9. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

10. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

11. An award of such other and further relief as this Honorable Court deems just and proper.

## IX. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## X. <u>Designation of Trial Counsel</u>

Plaintiff hereby designates Richard A Sinapi, Esquire, as trial counsel.

                                                            Plaintiff,
                                                           By her attorneys,
                                                           **SINAPI LAW ASSOCIATES, LTD.**

**Dated: February 3, 2017**            <u>**/s/ Richard A. Sinapi, Esq.**</u>
                                                           **Richard A. Sinapi, Esq. (#2977)**
                                                           2374 Post Road Suite 201
                                                           Warwick, RI 02886
                                                           Phone: (401) 739-9690; FAX: (401) 739-9490
                                                           Email: ras@sinapilaw.com